Marcella A. **KEITH,** Bonnie Kay **Marks,** and Terry G. **Dooley,** Appellants–Plaintiffs,

v.

Pauanani Jill **DOOLEY,** and Stanley V. Pennington, Appellees– Defendants.

No. 22A05–0303–CV–112.

Court of Appeals of Indiana.

Jan. 21, 2004.

Rehearing Denied March 24, 2004.

---

George M. Streckfus, New Albany, IN, Attorney for Appellants.

Marcus M. Burgher III, Luckett, Burgher & Burgher, Corydon, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Marcella A. Keith ("Marcella"), Bonnie Kay Marks ("Bonnie"), and Terry G. Dooley ("Terry") (collectively, "Nieces and Nephew") appeal the trial court's Indiana Trial Rule 12(B)(8) dismissal of their complaint against the executor of their aunt's estate and a beneficiary of their aunt's will on grounds that the same action is pending in another Indiana court. Because both actions instituted by Nieces and Nephew involve substantially the same parties, subject matter, and remedies, the trial court did not err in dismissing the complaint pursuant to Trial Rule 12(B)(8).

### Facts and Procedural History

On August 30, 1999, Arlene Pfeiffer executed her Last Will and Testament ("1999 Will"). The will, which was drafted by attorney Stanley Pennington, named Pennington as the executor. In the 1999 Will, Pfeiffer left $50.00 to her niece Bonnie, $50.00 to her niece Marcella, and $10.00 to her nephew Terry. Pfeiffer left 50% of the residue of her estate to Pauanani Jill Dooley ("Jill"). The remaining 50% was divided among El Bethel Church, El Bethel Cemetery, and great-nieces Lisa R. Hamrick and Leigh A. Penny. Pfeiffer died on February 27, 2000. At the time of her death, Nieces and Nephew were Pfeiffer's closest living relatives. On February 29, 2000, Pfeiffer's will was offered and admitted to probate in Crawford Circuit Court.

On June 30, 2000, Nieces and Nephew filed a Verified Complaint to Contest Will ("Will Contest") against Jill, Pennington, and others in Crawford Circuit Court in which they alleged, among other things, that the 1999 Will was "unduly executed,"

"executed under duress," and "obtained by fraud" and consequently asked the trial court to "[r]evok[e] the probate of the Last Will and Testament of Arlene Pfeiffer of August 30, 1999" and "[d]istribut[e] the Estate of Arlene Pfeiffer pursuant to Indiana law for an intestate estate[.]" Appellant's App. p. 37, 38, 39.

On February 27, 2002, while the Will Contest was still pending,[1] Nieces and Nephew filed a Complaint ("Tort Action"), which is the subject of this appeal, against Jill and Pennington in Floyd Superior Court alleging the tort of Interference with an Inheritance. Specifically, Nieces and Nephew alleged that after Pfeiffer executed the 1999 Will, she "did undertake to execute a new Last Will and Testament [ ("New Will") ]," which was to replace the 1999 Will. Appellant's App. p. 13. According to Nieces and Nephew, although the New Will was never reduced to writing, they would have been the "chief beneficiaries," Jill would have received nothing, and Pennington would not have been named as the executor. Appellant's App. p. 13. Nieces and Nephew alleged that Jill and Pennington "did undertake to prevent Arlene Pfeiffer from making and/or executing" the New Will. Appellant's App. p. 13. Consequently, Nieces and Nephew sought "compensatory damages for all such amounts as were directly and proximately caused by the conduct of" Jill and Pennington. Appellant's App. p. 14.

In June 2002, Jill and Pennington filed a motion to dismiss the Tort Action pursuant to Indiana Trial Rule 12(B)(8), which they renewed in November 2002. In the motion to dismiss, Jill and Pennington alleged that "the same action is pending in the Crawford Circuit Court[.]" Appellant's App. 31. Following a hearing, the trial court granted Jill and Pennington's motion

to dismiss in February 2003. This appeal ensued.

### Discussion and Decision

 Nieces and Nephew appeal the trial court's dismissal of their Tort Action pursuant to Indiana Trial Rule 12(B)(8). "As a general principle, when an action is pending before one Indiana court, other Indiana courts must defer to that court's authority over the case." *Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586, 590 (Ind.Ct.App.2003), *trans. denied.* "Courts observe such deference in the interests of fairness to litigants, comity between and among the courts of this State, and judicial efficiency." *Id.* at 590–91. Trial Rule 12(B)(8) implements this general principle by allowing dismissal of an action on the ground that the same action is pending in another Indiana court. *Id.* at 591. Thus, the rule prevents two courts from concurrently entertaining the same case. *Id.* The determination of whether two actions being tried in different Indiana courts constitute the same action depends on whether the outcome of one action will affect the adjudication of the other. *Id.* This outcome determinative test requires that one of two contemporaneous lawsuits be dismissed where the parties, subject matter, and remedies are substantially the same in both actions. *Id.*

 Here, it is undisputed that the parties are the same in the Will Contest and the Tort Action. Furthermore, the subject matter is substantially the same in both actions. Although the Will Contest focuses on the 1999 Will and the Tort Action focuses on the New Will, the key issue in each action is the validity of the 1999 Will. Indiana Code § 29–1–7–17 provides:

Any interested person may contest the validity of any will in the court having

---

**1.** From the materials provided to us on appeal, the last CCS entry in the Will Contest was September 20, 2002, which set a jury trial for March 6–7, 2003.

jurisdiction over the probate of the will within three (3) months after the date of the order admitting the will to probate by filing in the court the person's allegations in writing verified by affidavit, setting forth:

> (1) the unsoundness of mind of the testator;
>
> (2) the undue execution of the will;
>
> (3) that the will was executed under duress or was obtained by fraud; or
>
> *(4) any other valid objection to the will's validity* or the probate of the will.

The executor and all other persons beneficially interested in the will shall be made defendants to the action.

(emphasis added). Thus, it is apparent from the will contest statute that the 1999 Will can be contested because of actions before its execution, such as fraud or duress, or actions after its execution, such as physically destroying the will, executing a codicil to the will, revoking the will by writing, or executing a new will—all of which could affect the 1999 Will's validity. Nieces and Nephew's attempt to define the subject matter of the Tort Action differently from that of the Will Contest by isolating the New Will from the 1999 Will misses the mark. The heart of their argument is that the 1999 Will is not valid because Jill and Pennington prevented Pfeiffer from executing a new will, which would have revoked the 1999 Will. Therefore, the subject matter in the Will Contest and the Tort Action is substantially the same.

We next address whether the remedies in both actions are the same, which oftentimes is the determinative factor in this type of case. This Court addressed remedies in interference with inheritance tort actions in *Minton v. Sackett*, 671 N.E.2d 160 (Ind.Ct.App.1996). In *Minton*, we recognized for the first time in Indiana the tort of interference with an inheritance. *Id.* at 162. Specifically, we looked to the states of Florida, Illinois, Iowa, and Texas, all of whom had adopted the approach of the Restatement (Second) of Torts § 774B (1979), which provides: "One who by fraud or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to others for the loss of the inheritance or gift." *Id.* In determining whether to adopt the approach of the Restatement, we acknowledged that we must balance the competing goals of providing a remedy to injured parties and honoring the strictures of Indiana's probate code, which provides that a will contest is the exclusive means of challenging the validity of a will. *Id.* We noted that "[a] majority of the states [that] have adopted the tort of interference with an inheritance have achieved such a balance by prohibiting a tort action to be brought where the remedy of a will contest is available and would provide the injured party with adequate relief." *Id.*

 We adopted this balanced approach in *Minton* and ultimately affirmed the trial court's grant of summary judgment in favor of the defendant because the plaintiff had a will contest pending at the same time and "the remedies available under the will contest adequately provide for the damages sought in" the plaintiff's tort action. *Id. Minton* represents a public policy decision that a plaintiff must challenge tortious conduct surrounding the execution or revocation of a will in the will contest, but if the will contest does not provide an adequate remedy, only then can the plaintiff file an independent tort action for interference with an inheritance.[2] *See,*

---

**2.** Although *Minton* appears to severely restrict when a plaintiff may pursue an independent

*e.g., DeWitt v. Duce,* 408 So.2d 216, 218 (Fla.1981) ("The rule is that if adequate relief is available in a probate proceeding, then that remedy must be exhausted before a tortious interference claim may be pursued."); *In re Estate of Hoover v. Hoover,* 160 Ill.App.3d 964, 112 Ill.Dec. 382, 513 N.E.2d 991 (1987) ("The tort [of interference with an inheritance] will not lie, however, where the remedy of a will contest is available and would provide the injured party with adequate relief."). The adequacy of a remedy is not dependent upon whether a will contestant prevails, but upon whether the contestant has an opportunity to pursue the remedy. *Minton,* 671 N.E.2d at 163.

We now turn to the case before us. When Nieces and Nephew filed their Tort Action, the Will Contest was pending. Not only did Nieces and Nephew have the opportunity to challenge Jill and Pennington's tortious conduct in the Will Contest, but the remedies available in the Will Contest and the Tort Action are substantially the same. In the Will Contest, Nieces and Nephew sought revocation of the 1999 Will

and distribution of Pfeiffer's estate pursuant to Indiana's intestacy laws. Under intestacy laws, Nieces and Nephew would receive the bulk of Pfeiffer's estate if the 1999 Will were revoked.[3] In the Tort Action, Nieces and Nephew sought compensatory damages in an amount that would have made them the chief beneficiaries of Pfeiffer's estate.[4] The remedies sought in each action are substantially the same.

Because the Will Contest and the Tort Action involve substantially the same parties, subject matter, and remedies, we conclude that the actions are the same. Therefore, the trial court did not err in dismissing the Tort Action pursuant to Trial Rule 12(B)(8).[5]

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.

tort action for interference with an inheritance, there are still numerous situations where this tort is available, none of which apply here. *See* Curtis E. Shirley, *Tortious Interference with an Expectancy,* 41 Res Gestae 16 (Oct.1997) (listing various examples where this tort is still available in light of *Minton*'s restrictions, such as when the defendant prevented the testator from making a will leaving an inheritance to the plaintiff, and the plaintiff is not an intestate heir and there is no prior will benefiting him); *see also DeWitt v. Duce,* 408 So.2d 216, 219, 219 n. 6 (Fla.1981) (stating that this tort is available where a plaintiff did not discover a defendant's fraud until after the probate of the will was completed, such as in the case of the defendant suppressing a will less favorable to him so that the will more beneficial to him is probated).

3. *See* Ind.Code § 29–1–2–1(d)(4) ("The share of the net estate not distributable to the surviving spouse, or the entire net estate if there

is no surviving spouse, shall descend and be distributed as follows: ... If there is no surviving parent or brother or sister of the intestate, then to the issue of brothers and sisters. If such distributees are all in the same degree of kinship to the intestate, they shall take equally or, if of unequal degree, then those of more remote degrees shall take by representation.").

4. Although Nieces and Nephew also sought punitive damages in the Tort Action, *Minton* stated the following on the topic of damages in interference with inheritance cases: "A plaintiff can only expect to receive the amount he or she would have received had it not been for another individual's interference, and punitive damages are not included in this amount." *Minton,* 671 N.E.2d at 163.

5. In light of this holding, we do not reach Nieces and Nephew's argument concerning discovery methods.